### CLARK, et al v. NORTH BAY ISLAND ASSOCIATION, Inc.

Circuit Court, Dade County.

May 13, 1955.

Royal Flagg Jonas, Miami Beach, for plaintiffs.

Robert C. Lane and Curtiss B. Hamilton, both of Miami, for defendant.

VINCENT C. GIBLIN, Circuit Judge.

Counsel agree that there is involved in this cause no genuine issue as to any material fact and that the legal questions presented may and should be decided on the plaintiffs' motion for a decree on the pleadings.

The plaintiffs, Harold A. Clark, Jr., Clinton Brettell, Blanche L. Bretell, Alexander Jarosz, Marie Jarosz, Everette E. Jones, Opal Lynn Jones, Samuel Zorovich and Tina Zorovich are the owners of real property in the subdivision of North Bay Island. As a condition precedent to their purchase of such property, they were required to and did become members of the defendant association, the North Bay Island Association, Inc., a non-profit corporation. In their application for membership they agreed, if accepted as members, "to abide by the charter and by-laws" of the association and that, on such acceptance, their agreement should "constitute a contract which shall be binding not only upon the [plaintiffs] but also upon [their] heirs, personal representatives, successors and assigns."

The by-laws of the defendant association embody the restrictive provision that "no member will prior to the year 1970 directly or indirectly sell or lease any property on North Bay Island to any person not of the Caucasian race, or who is not a Gentile, or who has been convicted of a felony, or to any corporation in which any person not of the Caucasian race or who is not a Gentile, or who has been convicted of a felony, is a stockholder," and the further provision that "any member who violates any of these restrictions ... will pay over to this corporation the sum of $25,000 as liquidated damages and that these provisions may be enforced by this corporation or by any member of this corporation for the benefit of the corporation."

The plaintiffs, in doubt as to their legal rights and liabilities should they sell or lease any of their properties "to any person not of the caucasian race or who is not a Gentile" or to "any corporation in which any person not of the Caucasian race or who is not a Gentile" is a stockholder, have invoked the provisions of the declaratory decree statute (chapter 87 of the Florida Statutes) and seek a declaratory decree by which such rights and liabilities shall be determined.

The plaintiffs, I think, have properly invoked the provisions of the statute. They undoubtedly have a bona fide, actual and present practical need for the judicial declaration they seek growing out of the present situation in which they are involved. They are not merely asking unneeded legal advice and the questions they propound are not prompted by curiosity. See May v. Holley (Fla.), 59 So. 2d 636. The right to invoke the statutory provisions does not depend on the existence of an actual controversy, and where it is shown, as it is in this case, that those who seek the relief which may be accorded under the statute are in doubt as to the existence

of a right or liability under a written contract they are entitled to a judicial decree by which such doubt shall be removed. See Rosenhouse v. 1950 Spring Term Grand Jury (Fla.), 56 So. 2d 445. It cannot be logically contended that the plaintiffs must breach their agreement not to sell or lease "to any person not of the Caucasian race or who is not a Gentile" before they can learn what their rights and duties are. The statute (in section 87.03) provides that "a contract may be construed either before or after there has been a breach thereof," and (in section 87.05) that a declaratory decree "may be given or made by way of anticipation with respect to any act not yet done or any event which has not yet happened, and in such case [the decree] shall have the same binding effect with respect to that future act or event, and the rights or liability to arise therefrom, as if that act or event had already been done or had already happened before [the decree] was given or made."

The defendant association's motion to dismiss the plaintiffs' petition is therefore denied.

The questions, the answers to which are sought by the plaintiffs, succinctly stated, are—(1) Are the quoted restrictive provisions of the by-laws of the defendant association invalid? (2) If such provisions are not invalid is the plaintiff's agreement to abide by such provisions enforceable, by injunction or otherwise, or will an action for damages lie against the plaintiffs should they breach such agreement by selling or leasing any of their properties which are in the mentioned subdivision to any person not of the Caucasian race, or who is not a Gentile, or to any corporation in which any person not of the Caucasian race, or who is not a Gentile, is a stockholder?

The stated questions have been clearly answered in the opinions and decisions of the Supreme Court of the United States in Shelley v. Kraemer and McGhee v. Sipes (companion cases decided May 3, 1948), 68 S.Ct. 836, 334 U.S. 1, and Barrows v. Jackson (decided June 15, 1953), 73 S.Ct. 1031, 346 U.S. 249.

In each of the companion cases cited it was sought to enforce, by injunction, restrictive covenants which had as their purpose the exclusion of persons of designated race or color from the ownership of real property. The Supreme Court of Missouri, in Shelley v. Kraemer, and the Supreme Court of Michigan, in McGhee v. Sipes, had decided that the restrictive covenants were valid and enforceable by injunctive decree. The cases went to the Supreme Court of the United States for review on certiorari.

The case of Barrows v. Jackson, supra, was one in which damages were sought for breach of a restrictive covenant similar to those involved in the two prior cases. The trial court, the Superior Court of Los Angeles County, California, had decided that damages were not recoverable for a breach of a restrictive covenant involved; the District Court of Appeals had affirmed the trial court's judgment; and the Supreme Court of California had denied a hearing. The case reached the Supreme Court of the United States for review on certiorari.

In the cited companion cases, in an opinion written by the late Mr. Chief Justice Vinson, the Supreme Court said—

"We conclude . . . that the restrictive agreements standing alone cannot be regarded as a violation of any rights guaranteed to petitioners by the Fourteenth Amendment. So long as the purposes of those agreements are effectuated by voluntary adherence to their terms, it would appear clear that there has been no action *by the State* and the provisions of the Amendment have not been violated."

The court further held, however, in reversing the judgments of the Supreme Courts of Missouri and Michigan, that the state, through its courts, in the event of a deviation from *voluntary* adherence to the terms of such racial restrictive covenants, could not enforce the covenants by injunctive decree, because to do so would be violative of the provisions of the Fourteenth Amendment to the constitution of the United States.

In Barrows v. Jackson, supra, in which the court's opinion was written by Mr. Justice Minton, the court adhered to the conclusions reached in Shelley v. Kraemer and McGhee v. Sipes, and held that a court's awarding of damages for a breach of a racial restrictive covenant would constitute state action and would be violative of the provisions of the Fourteenth Amendment. The court said that "to compel respondent to respond in damages would be for the state to punish her for her failure to perform her covenant to continue to discriminate against non-Caucasians in the use of her property."

Because the questions presented in this proceeding have already been answered explicitly by the nation's highest tribunal, the decisions of which bind this court, it is difficult for me to answer why the plaintiffs deemed it necessary or advisable to solicit this court's answers. Nevertheless, as I have held, they have the right, under the provisions of the statute which they have properly in-

voked, to a determination and declaration by this court of their rights and liabilities.

Accordingly, it is declared and decreed (a) that the restrictive provision of the by-laws of the defendant association that "no member will prior to the year 1970 directly or indirectly sell or lease any property on North Bay Island to any person not of the Caucasian race, or who is not a Gentile, or who has been convicted of a felony, or to any corporation in which any person not of the Caucasian race or who is not a Gentile, or who has been convicted of a felony, is a stockholder" is not invalid; (b) that, however, the purposes of such restrictive provision can be effectuated only by voluntary adherence to its terms; and (c) that neither this court nor any other court of the state of Florida can enforce such restrictive provision by injunction, by awarding damages for a breach of the provision, or by any other judicial action, because the enforcement of the provision by the state, through any court or agency of the state, would be violative of the equal protection clause of the Fourteenth Amendment to the constitution of the United States.

No costs will be assessed or taxed against the defendant association because neither it nor any member of the association has sought, or threatened to seek, enforcement of the mentioned restrictive provision of the association's by-laws.